In re DUBLIN SECURITIES,
INC., et al., Debtors.

Myron N. TERLECKY, Bankruptcy
Trustee, Plaintiff,

v.

Dwight I. HURD, et al., Defendants.

Bankruptcy Nos. 93–55053, 93–
55054 and 93–55055.
Nos. C–2–96–0047, C–2–96–0048.
Adv. Nos. 95–0259, 95–0260.

United States District Court,
S.D. Ohio,
Eastern Division.

May 28, 1996.

Gerald Joseph Todaro, Columbus, Ohio, for Plaintiff.

John W. Zeiger, Marion H. Little, and Stuart G. Parsell, Zeiger & Carpenter, Columbus, Ohio, for defendants Emens, Kegler, Brown, Hill & Ritter, Co., L.P.A., and John R. Thomas and William C. Wilkinson, Virginia Brown, Thompson Hine and Flory, Columbus, Ohio, for Defendant Dwight Hurd.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

Plaintiff bankruptcy trustee seeks damages from defendant attorneys for alleged malpractice. During the relevant times, before the bankruptcy court appointed plaintiff trustee, defendants represented the debtor entities in connection with fraudulent intrastate penny stock sales for which debtors' principals were ultimately held criminally liable.

This Court withdrew reference of these actions from the bankruptcy court because the cases present non-core issues which would require trial before a jury. Defendants move to dismiss under Fed.R.Civ.P. 12(b)(1) and (6), arguing, *inter alia,* that the trustee lacks standing to assert his claims, that the trustee's claims are barred because the debtor entities are admitted joint tortfeasors, that the trustee's claims are barred under the doctrine *in pari delicto,* and that the trustee's claims are untimely. For the following reasons the Court holds that the trustee lacks standing, and therefore the Court grants defendants' motions to dismiss.

### I.

For purposes of adjudicating defendants' motions to dismiss, the Court assumes that the well-pleaded facts [1] set forth in plaintiff's second amended complaint are true. The Court also takes notice of certain undisputed facts set forth in the records of related court proceedings.

On August 25, 1994, the bankruptcy court appointed plaintiff Myron N. Terlecky to serve as trustee in bankruptcy trustee in the converted Chapter 7 proceeding *In re Dublin Securities, Inc.,* Bankr. No. 93–55053 (S.D.Ohio). On January 17, 1995, the bankruptcy court also appointed plaintiff to serve as trustee in bankruptcy in the related Chapter 7 proceedings *In re Dublin Management, Inc.,* Bankr. No. 93–55054 (S.D.Ohio), and *In re Dublin Stock Transfer, Inc.,* Bankr. No. 93–55055 (S.D.Ohio).[2]

Defendants are individual attorneys and law firms which represented Dublin Securities in connection with the sale of intrastate penny stocks. Defendants are: attorneys Dwight Hurd, John R. Thomas, Andrew J. Federico, and Dennis J. Concilla, and the law firms Emens, Kegler, Brown, Hill & Ritter ("Emens") and Carlile, Patchen & Murphy ("Carlile").

From 1987 and through 1992 Dublin Securities, acting as a broker dealer through its principals, devised and carried out a series of fraudulent offerings of so-called intrastate penny stocks.[3] The scheme was structured as follows: Dublin Securities first identified a small company in need of capital (the "Issuer"). Dublin Securities told the Issuer that it would raise substantial money for the Issuer. The Issuer then sold stock and warrants to insiders consisting of Dublin Securities officers, employees and their friends and relatives.

The insiders agreed to resell their stock and warrants only to Dublin Securities for a price set by Dublin Securities. This agreement, referred to as the "Gentleman's Agreement," was actually a commission under Ohio securities law, and therefore the securities were not exempt from the registration requirements of Ohio securities law. Dublin Securities misrepresented the nature of the

---

1. The Court does not, however, accept as true any conclusory allegations, unwarranted inferences, or legal conclusions plaintiff pleads in his second amended complaint.

2. For convenience the Court will refer to all three debtor entities collectively and interchangeably as "Dublin Securities."

3. The Court is generally familiar with the scheme, having presided over *SEC v. Midwest Investments, Inc.,* No. C–2–93–389 (S.D.Ohio May 18, 1993 and Feb. 2, 1995) (enjoining various activities in connection with the intrastate sale of Rcitz Data Communications stock, finding the activities violated anti-fraud provisions of federal securities laws), *aff'd,* No. 94–3433, 85 F.3d 630 (6th Cir. May 6, 1996).

insider transactions to the investors and the Ohio Division of Securities.

Dublin Securities sold stock to the public, aggressively making cold calls from "boiler room" phone banks, and using scripted sales pitches containing exaggerated, incomplete, or misleading information. Dublin Securities set the price for the stock based entirely on its own desire for enormous profits. The undisclosed mark-up on the stock sold to the public was exorbitant, and the price bore no relation whatsoever to the stock's actual value. In essence, stock with little or no value (worth, perhaps, a few cents per share) was sold by Dublin Securities to the public for $3 to $5 per share.

Dublin Securities made sales of about $60 million using these fraudulent tactics in thirteen different offerings. All of the transactions occurred in Ohio. On October 22, 1992, the Franklin County, Ohio special prosecutor seized all Dublin Securities documents and records. Dublin thereafter went into bankruptcy. Dublin Securities principals were ultimately convicted on various state criminal charges for their fraudulent activities.

The trustee maintains *inter alia* that the attorney defendants knew or should have known of the illegal nature of the activities of Dublin Securities, but failed to advise Dublin Securities of the illegality of the activities.

## II.

■ Defendants move to dismiss under Fed.R.Civ.P. 12(b)(1) and 12(b)(6).[4]

■ Rule 12(b)(1) provides for dismissal for lack of subject matter jurisdiction. In addressing a motion to dismiss under Rule 12(b)(1), the district court must accept as true all well-pleaded facts set forth in the complaint, and must construe them in the light most favorable to the non-moving party. *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1091 (2d Cir.1995). A district court may also dismiss for lack of jurisdiction under Rule 12(b)(1) based on the complaint supplemented by undisputed facts appearing in the record, or based on the complaint supplemented by undisputed facts appearing in the record in conjunction with the district court's resolution of any disputed facts.[5] *Ynclan v. Dept. of Air Force*, 943 F.2d 1388, 1390 (5th Cir.1991); *see also Hirsch*, 72 F.3d at 1091.

■ A motion to dismiss under Fed. R.Civ.P. 12(b)(6) for failure to state a claim "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Mayer v. Mylod*, 988 F.2d 635, 637 (6th Cir.1993). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir.1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, if the facts alleged are insufficient to state a claim, or if there is an insurmountable bar on the face of the complaint. A Rule 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Haffey v. Taft*, 803 F.Supp. 121, 127 (S.D.Ohio 1992).

## III.

■ Defendants argue that these actions must be dismissed because the trustee lacks standing. Standing is a prudential and judicially self-imposed limit on the exercise of federal jurisdiction. *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, —— U.S. ——, ——, 116 S.Ct. 1529, 1532–34, 134 L.Ed.2d 758 (1996). The

---

**4.** Dismissal for lack of standing is proper under Rule 12(b)(1) or 12(b)(6). *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 594 n. 2 (2d Cir. 1993).

**5.** The Court finds it unnecessary to resolve factual disputes for purposes addressing defendants' motions to dismiss.

70

standing doctrine coincides with the case or controversy limitation on federal jurisdiction expressed in U.S. Const. art. III, § 2, cl. 1. *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984). Thus, the standing " 'inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.' " *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979) (quoting *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)).

■ Standing is " 'perhaps the most important of [the jurisdictional] doctrines.' " *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (quoting *Allen,* 468 U.S. at 750, 104 S.Ct. at 3324). Yet, the doctrine of standing "has been called one of the most amorphous [concepts] in the entire domain of public law." *Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968).

■ At its core, the doctrine of standing requires the plaintiff to allege "a distinct and palpable injury to himself." *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206. The injury must be particularized to the plaintiff and concrete, not abstract, conjectural, or hypothetical. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1664–65, 75 L.Ed.2d 675 (1983).

■ Standing may not be inferred from the pleadings or arguments set forth in the pleadings; rather, it must affirmatively appear in the record. *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990). The party asserting jurisdiction bears the burden " 'clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.' " *Id.* (quoting *Warth,* 422 U.S. at 518, 95 S.Ct. at 2215)).

■ A trustee in bankruptcy lacks standing to pursue the general claims of creditors against third parties. *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 434, 92 S.Ct. 1678, 1688, 32 L.Ed.2d 195 (1972); *Gaff v. Federal Deposit Ins. Corp.,* 919 F.2d 384, 394 (6th Cir.1990); *DSQ Property Co., Ltd. v. DeLorean,* 891 F.2d 128, 130 (6th Cir.1989). The Court in *Caplin* held that a bankruptcy trustee lacked standing to assert claims against debenture trustees on behalf of creditor debenture holders. 406 U.S. at 434, 92 S.Ct. at 1688. The *Caplin* Court based its decision on three concerns: First, the Court noted that Congress had evinced no intent to give bankruptcy trustees the authority to pursue claims of debenture holders. *Id.* at 428–29, 92 S.Ct. at 1685–86. Second, the Court observed that the debtor corporation did not have any direct claim against the debenture trustees. *Id.* at 429–30, 92 S.Ct. at 1685–86. Third, the Court found that the trustee's action could interfere with the independent efforts of debenture holders to pursue claims against debenture trustees, especially if the bankruptcy trustee and debenture holders could not agree on theories of relief or the amounts of damages. *Id.* at 431–32, 92 S.Ct. at 1686–87. Moreover, it is questionable whether the trustee could broker a binding settlement on behalf of such creditors. *Id.* at 432, 92 S.Ct. at 1687. The class action mechanisms set forth in Fed.R.Civ.P. 23, in contrast, would avoid some of these problems. *Id.* at 433, 92 S.Ct. at 1688.

■ Congress has the power to grant standing to the bankruptcy trustee to assert creditors' claims, but has expressly declined to do so. *DSQ Property,* 891 F.2d at 131 (noting Congress expressly rejected proposed amendment to the Bankruptcy Code that would have reversed *Caplin* ); *see Caplin,* 406 U.S. at 434, 92 S.Ct. at 1688 (opining that Congress could confer standing to trustee to pursue claims on behalf debenture holders); *cf. Local 751,* —— U.S. at ——–——, 116 S.Ct. at 1532–37 (holding that the Worker Adjustment and Restraining Notification Act granted unions standing to sue certain employers for backpay on behalf of its individual members).

The trustee contends that the *Caplin* rule does not apply to his claims because he asserts debtors' claims of attorney malpractice, not claims of individual defrauded investor-creditors against debtors' attorneys. *See* Trustee's memorandum in opposition at 16. Defendants maintain that the trustee's char-

acterization of his claims as ones for attorney malpractice does not confer standing.

Defendants rely on the Second Circuit Court of Appeals' recent decision in *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (1995) for the proposition that a debtor's professional malpractice claim does not result in the trustee having standing to pursue what are, in essence, claims of creditors. The facts of *Hirsch* closely resemble those of the instant case. In *Hirsch*, the debtor partnership perpetrated an illegal real estate investment scheme. The general partners were convicted for wire fraud, bank fraud, attempt to impede administration of internal revenue laws, and structuring transactions to avoid reporting requirements. The transactions were part of a Ponzi scheme involving the continuous creation and sale of limited partnership interests. *See Hirsch*, 72 F.3d at 1088 n. 3.

The bankruptcy trustee for the consolidated estates of the partnership and general partners in *Hirsch* sued the accounting firm and law firms that had represented the partnership in connection with the fraudulent transactions, asserting, *inter alia*, fraud, breach of fiduciary duty, and professional malpractice on the part of the defendant professionals.

The defendants in *Hirsch* moved under Fed.R.Civ.P. 12(b)(1) to dismiss the trustee's action for lack of standing. The district court granted the motion, stating

> Recognizing that he cannot assert claims against defendants on behalf of the creditors, the trustee alleges damage to the debtors, to the extent of the unpaid allegations of the debtors to the creditors. Yet, the trustee has not alleged any distinct way in which the debtors were injured by the asserted wrongdoing of the defendants. Rather, the trustee alleges that the debtors suffered injuries identical to those of the creditors. Under these circumstances, it is the individual creditors, rather than the trustee, who may seek recovery from the defendants. Accordingly, the trustee lacks standing to assert these claims.

**6.** In a later unpublished opinion, the district court reconsidered its ruling in connection with a particular malpractice claim, but nonetheless

*Hirsch v. Arthur Andersen & Co.*, 178 B.R. 40, 43 (D.Conn.1994).[6] The court of appeals affirmed the district court's judgment. 72 F.3d at 1096. The circuit court agreed with the district judge that the trustee lacked standing to assert the claims of the defrauded investors in the limited partnerships. *Id.* at 1093. The court reasoned that under Connecticut law, limited partners could maintain a direct action against the general partnership's attorneys or accountants notwithstanding lack of privity. *Id.* The court concluded that such claims belonged exclusively to the defrauded investors because the investors had suffered injury particularized to them. *Id.*

Most significantly, the court of appeals in *Hirsch* also upheld the district court's dismissal of the trustee's professional malpractice claims—claims which were, in theory, property of the consolidated estate. The district court had concluded that any injury to the debtors was ultimately passed on to the defrauded creditors. The court of appeals, while agreeing with this rationale, found that the trustee's complaint failed sufficiently to allege domination and control of the debtors by the defendants, and concluded that dismissal of the professional malpractice claims was proper under the rule that "a trustee lacks standing to sue third parties who have joined [the debtors] in defrauding creditors." *Id.* at 1094 (relying on *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir.1991)).

The trustee attempts to distinguish *Hirsch* on the ground that it rested on Connecticut law, which, unlike Ohio law, allows third party actions against attorneys in the absence of privity.

■ With respect to accountant liability to third parties, Ohio has adopted a rule similar to the one followed in Connecticut:

> An accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accoun-

adhered to its original decision. *See* 72 F.3d at 1091.

tant's representation is specifically foreseen.

*Haddon View Inv. Co. v. Coopers & Lybrand,* 70 Ohio St.2d 154, 436 N.E.2d 212 (1982) (syllabus by the court); *see id.* at 155–56, 436 N.E.2d 212 (discussing *Ultramares Corp. v. Touche, Niven & Co.,* 255 N.Y. 170, 174 N.E. 441 (1931) (Cardozo, J.) and Restatement (Second) of Torts § 552 (1976)).

▮ Nonetheless, in Ohio, as in most jurisdictions, an attorney is generally immune from third party suits for malpractice:

> An attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with knowledge of his client, unless. such third person is in privity with the client or the attorney acts maliciously.

*Scholler v. Scholler,* 10 Ohio St.3d 98, 462 N.E.2d 158 (1984) (syllabus by the court, ¶ 1). Since *Haddon,* several classes of plaintiffs have argued that the more liberal *Haddon* standard should be applied to attorney liability, but Ohio appellate courts have consistently rejected the argument, holding that attorney liability is governed exclusively by the standard set forth in *Scholler. See Columbus Consol. Agency, Inc. v. Wolfson,* 70 Ohio App.3d 467, 471, 591 N.E.2d 385 (10th Dist.1990) (holding that attorney who rendered erroneous opinion that program did not constitute sale of securities under Ohio or federal law was immune from suit by purchasers of securities sales program, refusing to apply *Haddon* ); *see also Simon v. Zipperstein,* 32 Ohio St.3d 74, 512 N.E.2d 636 (1987) (restating rule of *Scholler,* reversing court of appeal's decision that adopted *Ultramares* standard for attorney liability); *American Express Travel Rel. Ser. Co. v. Mandilakis,* No. 68783, 1996 WL 239862, at *3–4 (Ohio App. 8th Dist. May 9, 1996); *Arpadi v. First MSP Corp.,* No. 59939, 1992 WL 83836, at *3–5 (Ohio App. 8th Dist. Apr. 23, 1992) (holding that attorney who represented limited partnership immune from suit by limited partners, refusing to apply *Haddon* ); *but see Simon* at 77–78, 512 N.E.2d 636 (dissenting opinion by Brown, J., arguing privity requirement should be abandoned); *cf. Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) (rejecting action for "aiding and abetting" securities fraud).

The trustee is correct in asserting that the defrauded creditors cannot pin their hopes of recovery on a direct common law malpractice action against the defendant attorneys. Nevertheless, this does not render *Hirsch* inapplicable. In *Hirsch,* the thrust of the court's reference to the availability of a negligent misrepresentation claim by the defrauded creditors was simply to show that the defrauded creditors had some avenue for relief against the professional defendants. In the instant case, it is abundantly clear that the defrauded investors have several viable avenues for relief against the defendant attorneys. Indeed, the defrauded investors have already begun to avail themselves of these remedies. For example, the Court takes notice that defendants Hurd and Emens are named as defendants in a class action by investors who purchased shares of Environmental Safety First, Inc. through Dublin Securities. *Glatz v. Beaman,* Case No. 92–CV–058 (Erie Cty. Ohio Com.Pl). The *Glatz* plaintiffs assert what can fairly be characterized as direct allegations of securities fraud against defendant Hurd. *See Glatz* compl. ¶¶ 39–46, 65. In addition, plaintiffs in a class action pending in the Western Division of this District assert RICO claims against defendants Hurd, Emens, and Carlile. *Bryk v. Hurd,* Case No. C–1–95–1096 (S.D.Ohio). The *Bryk* plaintiffs assert, for example, that defendant Hurd "was involved in the management and control of the Dublin Companies from the inception of the conspiracy until late 1992." *Bryk* compl. ¶ 2. Similarly, the complaint in *Bryk* alleges that the Emens and Carlile firms were "directly involved" in operating Dublin Securities. *Id.* ¶¶ 8, 9. In short, the *Bryk* plaintiffs allege that the defendant attorneys were directly involved in the alleged scheme.

▮ Although under *Scholler* attorneys are generally immune from *malpractice* suits brought by third parties, it does not follow that the immunity shields attorneys from *direct* actions for fraud. For example, it is well established that an attorney may be

liable for direct participation in securities fraud:

> Any person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller relies may be liable as a primary violator under 10b–5, assuming *all* of the requirements for primary liability under Rule 10b–5 are met.

*Central Bank of Denver,* 511 U.S. at —, 114 S.Ct. at 1455; *Anixter v. Home–Stake Prod.,* 77 F.3d 1215 (10th Cir.1996) (holding that accountant could be held primarily liable for securities fraud, but reversing verdict against accountant because of erroneous jury instruction on aiding and abetting); *Molecular Technology Corp. v. Valentine,* 925 F.2d 910, 917–18 (6th Cir.1991) (discussing potential primary liability of attorney for securities fraud). Admittedly, the plaintiffs in *Glatz* or *Bryk* have not, to this Court's knowledge, attempted to assert federal securities law claims against the attorney defendants. Perhaps they have refrained from doing so believing that the purely intrastate penny stock transactions were exempt from the reach of the anti-fraud provisions of federal securities laws.[7] Such claims may be available to the defrauded investors in light of this Court's ruling in *SEC v. Midwest Investments, Inc.,* No. C–2–93–389 (S.D.Ohio May 18, 1993 and Feb. 2, 1995) (enjoining various activities in connection with the sale of Reitz Data Communications stock, finding the activities violated anti-fraud provisions of federal securities laws), *aff'd,* No. 94–3433, 85 F.3d 630 (6th Cir. May 6, 1996).[8]

In sum, the defrauded investors in the instant case have direct avenues of relief against the defendant attorneys.[9] Hence, the rationale of *Hirsch* applies to the instant case. The Court finds that *Hirsch* is well-reasoned and on point.

The Court will not rely solely on *Hirsch,* however. The Court finds that application of the factors discussed in *Caplin* dictates the same result.

The first concern of the Court in *Caplin* had was that Congress had not authorized bankruptcy trustees to bring actions on behalf of debenture holders. 406 U.S. at 428–29, 92 S.Ct. at 1685–86. Here, Congress has likewise evinced no intent to grant trustees standing to bring claims on behalf of defrauded investors. *See DSQ Property,* 891 F.2d at 131 (noting Congress expressly rejected proposed amendment to the Bankruptcy Code that would have reversed *Caplin* ).

█ Second, the Court in *Caplin* observed that the debtor corporation did not have any direct claim against the debenture trustees. *Id.* at 429–30, 92 S.Ct. at 1685–86. The trustee in the instant case seeks to satisfy this concern by couching his claims under the rubric professional malpractice. The standing inquiry, however, focuses on the injury to the plaintiff rather than the particular legal theory at issue. That the estate could, in theory, have a malpractice claim is not dispositive.[10] The real injured parties are the investors, not the debtor corporations. Whatever claims the debtor entities may have for malpractice are strictly *vis-a-vis* the injury suffered by the defrauded investors.

---

7. Understandably, defendants do not volunteer to discuss new theories under which they could be held liable.

8. The trustee appears to recognize the possibility of federal claims arising from the subject transactions. *See* Second Amended Compl. ¶¶ 20 and 38.

9. There may, of course, be bars to such claims, such as statute of limitations. The trustee, however, would face the same hurdles in attempting to assert claims against the attorney defendants.

10. The Court finds merit in the *Hirsch* court's conclusion that the debtor entities were not, as the trustee here suggests, pure as the driven snow, existing wholly separate and apart from the principals who created the entities for what has been determined to have been criminal purposes. *See* 72 F.3d at 1094 ("A claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not the guilty corporation") (quoting *Wagoner,* 944 F.2d at 120). Although akin to concepts like *in pari delicto,* this doctrine exists as an independent concept applied in analyzing whether a bankruptcy trustee lacks standing. *See Wagoner* at 120.

The third concern of the *Caplin* Court is particularly significant as applied to the instant case. The Court in *Caplin* opined that the trustee's claims might interfere with the independent efforts of debenture holders pursuing directly their own claims against the debenture trustees, especially if the bankruptcy trustee and debenture holders could not agree on theories of relief or the amounts of damages. *Id.* at 431–32, 92 S.Ct. at 1686–87. Moreover, it is questionable whether the trustee could broker a binding settlement on behalf of such creditors. *Id.* at 432, 92 S.Ct. at 1687. Class actions under Fed.R.Civ.P. 23 avoid some of these problems. *Id.* at 433, 92 S.Ct. at 1688.

Here, class actions are pending in other forums in which defrauded investors seek relief directly against defendant attorneys. The Court is persuaded that the concerns of the *Caplin* Court would be realized in the instant case if the trustee was held to have standing to assert causes of action which belong more properly to the defrauded investors. The real injured parties should be given the opportunity to guide the litigation and choose their own strategies and legal theories in seeking whatever relief to which they may be entitled against the defendant attorneys. Moreover, as in *Caplin,* the trustee in bankruptcy would not likely be able to negotiate a binding settlement on behalf of the investors.

In addition, as defendants aptly point out, there is little if anything to be gained, and potentially much to be lost, by filtering the investors' claims through the bankruptcy estate. It would be grossly inefficient to enlarge the carcass of the debtor entities merely to effect a costly pass-through of the investors' claims against the attorney defendants. Such an exercise would serve only to line the pockets of non-creditors, who stand in a position to receive payment from any recovery off-the-top in the form of administrative expenses under 11 U.S.C. § 726(a)(1). As the Court in *Caplin* observed, class actions under Fed.R.Civ.P. 23 avoid such problems.

For these reasons, the Court concludes that the trustee does not have standing to assert claims against defendants. The threshold issue of standing is dispositive; the Court therefore does not reach defendants' other grounds for dismissal.

## IV.

Based on the above, the Court **HOLDS** that the plaintiff bankruptcy trustee lacks standing to assert the claims presented in these actions. The Court therefore **GRANTS** defendants' motions to dismiss.

The Clerk shall enter a final judgment in these actions in favor of defendants, and against plaintiff, dismissing these actions for lack of jurisdiction under Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

The Clerk shall remove these cases from the Court's pending cases and motions lists.

The Clerk shall unseal all documents previously filed under seal in this case. *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1311–12, 55 L.Ed.2d 570 (1978); *In re Knoxville News–Sentinel Co.,* 723 F.2d 470, 473–74 (6th Cir. 1983).

**IT IS SO ORDERED.**