**BAYVUE APARTMENTS JOINT VENTURE, et al., Plaintiffs,**

v.

**OCWEN FEDERAL BANK FSB, et al., Defendants.**

Civil Action No. 96–2282(JR).

United States District Court, District of Columbia.

July 11, 1997.

Stephen C. Glassman, Glassman & Bullock, Vienna, VA, Ann E. Schmitt, Reed, Smith, Shaw & McClay, Washington, DC, for Plaintiffs.

Judry Subar, Department of Justice, Washington, DC, for Defendant Ocwen Federal Bank FSB.

Tradewinds International, Washington, DC, Joseph Poole, Washington, DC, for Defendant Cisneros.

### MEMORANDUM

ROBERTSON, District Judge.

Plaintiffs, owners of three multi-family housing projects in Virginia, have sued the U.S. Department of Housing and Urban Development and Ocwen Federal Bank seeking declaratory and equitable relief in connection with HUD's sale to Ocwen of notes executed to refinance the projects.[1] HUD and Ocwen move to dismiss for lack of standing and for failure to state a claim upon which relief can be granted.[2] For the reasons discussed below, defendants' motions must be granted.

### Facts

The facts alleged in the complaint are taken to be true: Plaintiffs are joint ventures that own multi-family housing proper-

ties in Prince William County, Virginia. The properties are managed by Southern Management Corporation. In 1986 and 1987, plaintiffs refinanced the properties with loans financed by mortgage-backed securities that were insured by Government National Mortgage Association (Ginnie Mae), a department of HUD. The income from the properties failed to provide sufficient funds to cover plaintiffs' mortgage obligations.

In January 1993, plaintiffs sought to restructure the financing by purchasing the mortgage-backed securities from the bondholders. Ginnie Mae discouraged that effort and instead advised plaintiffs to default on the loans so that they could be restructured through HUD: under HUD's mortgage insurance program, if a borrower defaults, the holder of the loan is entitled to assign the mortgage to HUD and to collect the mortgage insurance benefits. Plaintiffs did default on the loans, HUD did initiate assignment proceedings, and HUD then became the holder of the mortgage notes.

Plaintiffs allege that, after the default-and-assignment process, HUD established a "*de facto* mortgage maintenance plan." Under the "plan," plaintiffs were required to meet HUD's criteria for maintenance and facility improvement, make contributions to reserves and escrows, and remit revenues in excess of expenses. HUD was to withhold enforcement of the specific payment terms of the loans. That "plan" allegedly remained in effect, by mutual agreement, for approximately three years.

In June 1996, HUD notified plaintiffs that their notes would be sold at auction. Plaintiffs' notes were part of a package of approximately 160 loans offered for sale under HUD's "mortgage sale program," which was initiated in 1994 to sell HUD-owned mortgages to private investors. HUD required that bidders have certain financial qualifications and selected successful bidders through the use of a "computer optimization model" that calculated the combination of bids that

---

1. Tradewinds International, Inc. appears to be the only other remaining defendant, but there has been no activity in the case as to Tradewinds.

2. Defendant Ocwen's motion, filed after its answer, will be treated as a motion for judgment on the pleadings. See F.R.C.P. 12(c).

yielded the largest return to the government. *See* Notice, 61 Fed.Reg. 38467–68 (July 24, 1996).

Plaintiffs did not bid in their own names at the auction. Instead, through Southern Management Corporation, they contracted with an investment banking firm, Donaldson, Lufkin & Jenrette Mortgage Capital, Inc., to place a bid. The investment banking firm bid $28,700,000 for all three mortgage loans. That bid was unsuccessful. The successful bidder for plaintiffs' notes was defendant Ocwen Federal Bank, which submitted bids on 47 notes, including plaintiffs' notes. Plaintiffs were advised on August 29, 1996, that their notes had been sold. A month later, on or about September 30, 1996, Ocwen sued the plaintiffs in the United States District Court for the Eastern District of Virginia for an accounting and to enjoin their further use of rents and profits from the properties.[3]

Plaintiffs filed the instant suit on October 3, 1996, seeking relief from HUD's and Ocwen's actions. Later, after receiving notice that foreclosure proceedings would be initiated, plaintiffs moved for a temporary restraining order and preliminary injunction. Those motions were denied on October 30, 1996. On November 19, 1996, the day before the public foreclosure sale was scheduled to take place, plaintiffs all filed petitions for bankruptcy.

### *Analysis*

Defendants' motions address all three of plaintiffs' demands: for specific performance of the alleged "*de facto* mortgage maintenance plan"; for an order setting aside the HUD auction of their notes as unlawful and invalid; and for an accounting. HUD submits that plaintiffs lack standing either to challenge the auction proceedings or to seek specific enforcement of the alleged *de facto* agreement, and HUD submits further that all of plaintiffs' claims must fail as a matter of law. Ocwen adopts all of HUD's arguments and argues further that an equitable accounting is not warranted where plaintiffs can obtain an accounting in the bankruptcy proceedings now underway.

1. *De facto mortgage modification*

■ Analysis of the threshold standing question produces a somewhat circular result: Plaintiffs have successfully pleaded the first two of the three necessary elements of standing to assert their claim for specific performance of the alleged *de facto* mortgage modification: (1) an injury in fact that is (2) fairly traceable to the challenged acts. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The third required element of "redressability," however, requires a showing that relief is "likely" to follow from a favorable decision. *Allen v. Wright*, 468 U.S. 737, 750–52, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984). Since HUD no longer owns the notes in question, and Ocwen was never a party to the alleged *de facto* modification agreement, the question of redressability (and thus the standing question) turns on the question whether the alleged *de facto* agreement is or ever was enforceable.

The answer to that question is that neither federal law nor Virginia law permits the enforcement of an agreement that was unwritten and beyond HUD's authority to make.

■ HUD's authority to enter into workout agreements or modifications of mortgage terms is contained in Section 239 of the National Housing Act, 12 U.S.C. § 1715z–4. HUD's implementing regulations provide *inter alia* that modifications of the terms of HUD-insured mortgages must be in writing and must be approved by the Commissioner. *See* 24 C.F.R. § 207.256b. Plaintiffs do not contend that the modification agreement was reduced to writing, or that it was entered into with the approval of the Commissioner. They argue, instead, that the regulation is not applicable where HUD has become the holder of a mortgage through assignment. That argument is contrary to the plain language of the regulation and is without merit. *Cf. Lehner v. United States*, 1 Cl.Ct. 408, 415–16 (Cl.Ct.1983); *Kent Farm Co. v. Hills*, 417 F.Supp. 297, 303 (D.D.C.1976). Courts will not enforce an agreement that was be-

---

**3.** Ocwen dismissed its E.D.Va. complaints on October 18, 1996.

yond HUD's authority to make. *See Lehner, supra,* 1 Cl.Ct. at 415–16 (citing *Federal Crop. Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947)).

■ Nor would the alleged *de facto* agreement be enforceable under Virginia law,[4] because Virginia's Statute of Frauds requires that contracts for the transfer of land be in writing to be enforceable. Va. Code § 11–2(6), § 11–1. Plaintiffs' attempt to trump the Statute of Frauds with an estoppel argument has no merit. Estoppel does not run against the government absent a showing of egregious injustice, *International Organization of Masters v. Brown,* 698 F.2d 536, 551 (D.C.Cir.1983), and, as to Ocwen, nowhere in the complaint does plaintiff allege acts of misrepresentation or misconduct.

Plaintiffs' claim for specific performance of the alleged *de facto* mortgage modification agreement must accordingly be dismissed, either for failure to state a claim upon which relief may be granted, or for want of standing because plaintiffs' injury is not redressable by the remedy plaintiff seeks.

### 2. *Set aside auction sale*

■ Plaintiffs lack standing to assert their demand that the auction sale be set aside. They did not participate as bidders, and a plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The entity that did make a bid for plaintiffs' notes, DLJ, planned to hold the notes as plaintiffs' creditor and to restructure the notes so that plaintiffs' properties could be operated. Complaint at ¶ 24. The record contains no indication that DLJ was to be subject to plaintiffs' control. Plaintiffs' agency theory of standing thus

fails as a matter of law. *See Johnson v. Bechtel Associates Professional Corp.,* 717 F.2d 574, 579 (D.C.Cir.1983), *reversed on other grounds sub nom. Washington Metropolitan Transit Authority v. Johnson,* 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984); *Lott v. Burning Tree Club,* 516 F.Supp. 913, 917 (D.D.C.1980).[5]

Even if plaintiffs could establish an agency relationship with DLJ, their asserted injuries are not within the "zone of interests" protected by the statute or regulation in question—in this case, the National Housing Act and HUD's operating regulations. *See Mountain States Legal Foundation v. Glickman,* 92 F.3d 1228, 1235 (D.C.Cir.1996).

Plaintiffs' submission that they are "owners-bidders" who "make safe and sanitary housing available to low and moderate income families" and that HUD's 1994 regulations expanded the purposes of the operating statute and regulations to create a "partnership" of sorts with private investors is too broad.

The specific regulation on which plaintiffs rely for their claim of standing—bidder restrictions—does not protect their interests. As the Fifth Circuit recognized in *Moses v. Banco Mortgage Co.,* 778 F.2d 267 (1985), the regulation restricting bidders was intended to allow HUD to control bidding. It extends no benefit to plaintiffs. Nor did HUD's 1994 regulations expand the purposes of the National Housing Act in order to bring investors-bidders within the zone of interests protected by the Act.[6] The 1994 regulations, issued in response to the losses the government was suffering in managing defaulting HUD mortgages, expressly authorized the Secretary to sell mortgage loans to preserve low-income housing in the "least costly fashion" and to "protect the financial interests of

---

4. Rights created by contract for the transfer of interests in land are generally governed by the law of the state where the land is located, in this case Virginia. *See In re Parkwood, Inc.,* 461 F.2d 158, 171 (D.C.Cir.1971). (The result would be the same under District of Columbia law. *See Barbour v. Baltz,* 146 A.2d 905, 906 (D.C.Mun. 1958); D.C.Code § 28–3502.)

5. In determining the presence of subject matter jurisdiction on a motion to dismiss under

F.R.C.P. 12(b)(1), the court may look to material outside the complaint. *See Federation for American Immigration Reform v. Reno,* 897 F.Supp. 595, 600 n. 6 (D.D.C.1995), *aff'd,* 93 F.3d 897 (D.C.Cir.1996).

6. In *Moses,* the court found that the intended beneficiaries of the National Housing Act were "low-income families who require housing." 778 F.2d at 272.

the Federal Government." 12 U.S.C. § 1701z–11(a).

### 3. *Accounting*

█ Plaintiffs seek an accounting to determine the allocation of payments made on their notes over the last ten years to "principal, interest, escrow, and reserve," claiming that, because HUD contests the existence of the *de facto* modification agreement, they cannot determine how the payments were applied. The necessary prerequisite to the right to maintain an equitable accounting is the absence of an adequate remedy at law. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 478, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962). Defendants argue persuasively that plaintiffs have an adequate remedy under the bankruptcy rules. *See* Fed.R.Bankr.P.2004. Moreover, even if the bankruptcy rules did not afford an adequate remedy, this court would decline to exercise its jurisdiction. *See Burford v. Sun Oil Co.,* 319 U.S. 315, 333, 63 S.Ct. 1098, 1107, 87 L.Ed. 1424 (1943). An accounting under district court auspices would be a waste of resources when relief of a similar even if not exactly equal nature is available through alternative means.

An appropriate order accompanies this memorandum.

### *ORDER*

Upon consideration of the motions to dismiss submitted by defendants Henry Cisneros and Ocwen Federal Bank, the opposition thereto, and the entire record, for the reasons stated in an accompanying memorandum, it is this 11th day of July, 1997,

**ORDERED** that defendant Cisneros' motion to dismiss [# 23] is *granted.* It is

**FURTHER ORDERED** that defendant Ocwen Federal Bank's motion to dismiss [# 34] is *granted.* And it is

**FURTHER ORDERED** that plaintiffs' complaint is *dismissed* as to both defendants.