**In re VENICE–OXFORD ASSOCIATES LIMITED PARTNERSHIP, Debtor.**

**Venice–Oxford Associates Limited Partnership, Plaintiff,**

v.

**Multifamily Mortgage Trust 1996–1 and LaSalle National Bank, Defendants.**

**Bankruptcy No. 97–9831–8G1. Adversary No. 97–835.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

April 17, 1998.

See also 236 B.R. 791, 236 B.R. 805, 236 B.R. 820.

Russell M. Blain, Wanda H. Anthony, Stichter, Riedel, Blain & Prosser, P.A., Tampa, FL, for Venice–Oxford Associates Limited Partnership.

Paul Bennett Bran, Guy S. Neal, Dickstein, Shapiro, Morin & Oshinsky, L.L.P., Washington, D.C., for Venice–Oxford Associates Limited Partnership.

Gregg W. McClosky, Michael J. Ioannou, Mattlin & McClosky, Boca Raton, for Multifamily Mortgage Trust 1996–1 and LaSalle National Bank.

**ORDER ON MOTION TO DISMISS**

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court to consider the Motion to Dismiss the above-captioned adversary proceeding filed by the Defendants, Multifamily Mortgage Trust 1996–1 and LaSalle National Bank. The Debtor, Venice–Oxford Associates Limited Partnership, commenced the adversary proceeding by filing a Complaint to Determine the Extent, Validity and Priority of the Defendants' Claims, to Equitably Subordinate Claims, to Disallow and/or Limit Claims, and for Declaratory Judgment and Other Relief.

The Debtor is the owner of a residential apartment complex in Sarasota County, Florida. It appears that the Debtor executed a mortgage in favor of Shearson/American Express Mortgage Company on October 27, 1982. Following intermediate assignments, the mortgage was assigned to the Secretary of Housing and Urban Development (HUD), and the Defendants ultimately acquired the mortgage from HUD in 1996. The Defendants claim that they are the holders of the first mortgage on the Debtor's property.

The Complaint filed by the Debtor initially contained three counts. Count I consists of an action to equitably subordinate the Defendants' secured claim pursuant to Section 510(c) of the Bankruptcy Code. Count II consists of an action to disallow the Defendants' secured claim to the extent that it exceeds the consideration paid by the Defendants to purchase the mortgage. This Count is based on Section 105 and Section 502(b)(1) of the Bankruptcy Code. The Debtor has agreed to voluntarily dismiss Count III of the Complaint. (See Debtor's Opposition to Motion to Dismiss Complaint, p. 2, n. 1). Consequently, only Count I and Count II of the Complaint remain for consideration in this Order.

The Defendants assert that the Complaint should be dismissed for two primary reasons. First, as a threshold issue, the Defendants contend that the Debtor lacks standing to bring and maintain the action because neither the Debtor nor the creditors of the Debtor's estate were harmed as a result of any conduct of the Defendants. Secondly, the Defendants contend that the Complaint fails to state any claim upon which relief may be granted.

**Legal Standard**

Rule 12(b) of the Federal Rules of Civil Procedure, as made applicable by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, provides in part:

**RULE 12. DEFENSES AND OBJECTIONS—WHEN AND HOW PRESENTED—BY PLEADING OR MOTION—MOTION FOR JUDGMENT ON THE PLEADINGS**

(b) **How Presented**.... [T]he following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, ... (6) failure to state a claim upon which relief can be granted.

The Defendants in this case claim that the Complaint should be dismissed because the Debtor lacks standing to bring the cause of action, and because the Complaint fails to state a claim upon which relief can be granted.

■ A motion to dismiss based on a plaintiff's lack of standing may be considered under either Rule 12(b)(1) or Rule 12(b)(6). *In re Dublin Securities, Inc.,* 197 B.R. 66, 69 n.4 (S.D.Ohio 1996)(citing *Rent Stabilization Ass'n v. Dinkins,* 5 F.3d 591, 594 n.2 (2d Cir.1993)).

■ With respect to motions under Rule 12(b)(1), a court "must accept as true all well-pleaded facts set forth in the complaint, and must construe them in the light most favorable to the non-moving party." *In re Dublin Securities,* 197 B.R. at 69.

With respect to motions under Rule 12(b)(6), it is well-established that a complaint should not be dismissed unless "it appears beyond a doubt that the plaintiff

can prove no set of facts in support of his claim that would entitle him to relief." *In re Dublin Securities,* 197 B.R. at 69; and *Harmony Homes, Inc. v. United States,* 890 F.Supp. 1032, 1035 (M.D.Fla.1995)(quoting *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Additionally, "when considering a motion to dismiss, a court must consider the plaintiff's allegations as true." *Harmony Homes,* 890 F.Supp. at 1035. "All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant." *In re Dublin Securities,* 197 B.R. at 69.

█ Generally, therefore, the court "must accept as true the factual allegations stated in the complaint," "draw all reasonable inferences in favor of the plaintiff," and then dismiss the complaint "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *Pineiro v. Pension Benefit Guaranty Corporation,* 1997 WL 739581 (S.D.N.Y.).

### The Complaint

In this case, the following "factual allegations" appear in the Complaint:

1. On October 27, 1982, the Debtor obtained a construction/permanent loan from Shearson/American Express Mortgage Corporation (the Loan), which Loan was secured by a Mortgage and Security Agreement. (¶ 9).

2. The Loan was insured by HUD. (¶ 10).

3. Between 1984 and 1988, the Loan was assigned three times. The third assignment, in 1988, was to HUD. (¶ 11).

4. In June of 1996, HUD sold the Loan to the Defendants as part of a "large portfolio sale." (¶ 12).

5. HUD published criteria for qualified bidders to participate in the HUD auction (¶ 16), and represented that the bidding process was not structured to favor any particular type of bidder. (¶ 17).

6. HUD actually determined the successful bids by aggregating those bids which produced the largest sum, rather than selecting the highest bids on particular loans. (¶ 18).

7. "Upon information and belief," the bidding process and HUD's evaluation favored large investment groups. (¶ 19).

8. "Upon information and belief," Goldman Sachs & Co., a large investment group, organized the Defendant as a vehicle to bid at the HUD auction. (¶ 20).

9. "Upon information and belief," Defendants bid at the HUD auction "either on their own or in concert with others." (¶ 22).

10. "Upon information and belief," Defendants "conspired, combined and agreed with other successful bidders to allot" bids on the loans at the HUD auction. (¶ 23).

11. "Upon information and belief," prior to the HUD auction, the Defendants were given access to the offices of HUD or HUD's manager and to confidential information regarding the loans. (¶ 24).

12. "Upon information and belief," at least one meeting occurred at HUD in which HUD's manager discussed the marketing of the loans to be sold at the HUD auction in the presence of certain bidders, including the Defendants or the Defendants' agents, while other bidders were not included. (¶ 25).

13. "Upon information and belief," HUD's manager provided certain institutional investors, including the Defendants, with proprietary and confidential information not available to other bidders. The information was provided in exchange for professional advice. (¶ 26).

14. "Upon information and belief," Defendants received proprietary information regarding the Loan earlier than other bidders, or received information which was different and more complete than the information given to other bid-

ders, in violation of HUD auction rules. (¶ 27).

15. "Upon information and belief," Defendants' representatives were permitted to attend meetings with HUD's representatives during which the loans were discussed, providing the Defendants with confidential and proprietary information contrary to HUD auction procedures, and reflecting the "intentional steering" of the auction to certain large investor groups. (¶ 28).

16. In part due to the improper access granted by HUD, the Defendants had an unfair advantage over other bidders and were designated the successful bidders on the Loan at the auction. (¶ 30).

17. "Upon information and belief," HUD may hold a right to repurchase the Loan and an undisclosed 30 percent interest in the Loan pursuant to its contract with the Defendants. (¶ 13).

18. The HUD auction is the subject of an ongoing criminal investigation by the United States Department of Justice and by HUD's Inspector General. (¶ 31).

These allegations are restated in the Debtor's Opposition to Motion to Dismiss Complaint as "facts assumed to be true." Based on the allegations, the Debtor contends that the secured claim of the Defendants should be equitably subordinated to the claims of other creditors, and that the claim of the Defendants should be disallowed to the extent that it exceeds the purchase price paid by the Defendants for the Mortgage.

## Discussion

In their Motion to Dismiss, the Defendants first contend as a threshold issue that the Debtor lacks standing to bring and maintain the action to subordinate or disallow their secured claim. The focus of the Debtor's Complaint is on the events surrounding the Defendants' successful bid for the mortgage at the HUD auction. The Defendants assert, however, that the Debtor failed to allege how their conduct adversely affected either the Debtor or the Debtor's creditors, since the Debtor would continue to owe the same amount and continue to be in default under the Loan and Mortgage, regardless of any irregularities in the bidding process. According to the Defendants, the only parties who may have been adversely affected by their conduct were other bidders at the auction. Since the Debtor did not submit a bid or participate in the bidding process, the Defendants contend that the Debtor is attempting to assert the rights of third parties, or disappointed bidders, who may have been injured by the process.

■■■ The Eleventh Circuit Court of Appeals identified the three constitutional requirements for standing in *E.F. Hutton v. Hadley*, 901 F.2d 979, 984 (11th Cir. 1990), as follows: (1) The party "must have suffered actual injury or show the imminence of such injury;" (2) the injury must be "fairly traceable to the alleged unlawful conduct;" and (3) the party must show that "the requested relief likely will redress the injury." *E.F. Hutton*, 901 F.2d at 984. "When standing has been contested, it is the burden of the party claiming standing 'to plead and prove injury in fact, causation, and redressability.'" *Id.* (quoting *Steele v. National Firearms Act Branch*, 755 F.2d 1410, 1414 (11th Cir.1985)). These requirements reflect the "constitutional concerns" regarding standing, which contemplate that plaintiffs in federal courts must have a "personal stake in the outcome" of the litigation, and must allege some "threatened or actual injury" resulting from the opposing party's conduct. *E.F. Hutton*, 901 F.2d at 984. (Citations omitted.) Abstract harm or abstract injury is not sufficient to satisfy the constitutional requirement. The injury or threat of injury must be actual and immediate. *Id.*

■■■ Additionally, even if the constitutional requirements for standing are satisfied, a party seeking to establish standing must also show that certain "prudential considerations" do not prevent the court

from hearing the action. Specifically, judicial action is discouraged where the party (1) is asserting the rights of a third party instead of his own rights; (2) is alleging a generalized grievance instead of a particular injury that he sustained; or (3) is asserting an injury that is "outside the zone of interests" that the applicable law is intended to protect. *Id.* at 984–85. (Citations omitted.) See also *Sinclair's Suncoast Seafood, Inc.*, 140 B.R. 588, 591 (Bankr.M.D.Fla.1992).

In *Bayvue Apartments Joint Venture v. Ocwen Federal Bank FSB*, 971 F.Supp. 129 (D.D.C.1997), the District Court addressed the standing issue under circumstances similar to those found in the case under consideration. In *Bayvue*, the plaintiffs had filed an action for declaratory and equitable relief to set aside HUD's sale of certain mortgage notes to a bank at a HUD auction in the summer of 1996. The plaintiffs in the action were the owners of multifamily housing projects who had refinanced the projects with loans insured by HUD. After HUD had acquired the loans and advised the plaintiffs that the notes would be sold at an auction, the plaintiffs contracted with an investment banking firm to submit a bid for the loans at the auction. *Bayvue*, 971 F.Supp. at 131. The investment banker's bid was unsuccessful, and Ocwen Federal Bank purchased the loans. The District Court ruled:

> Plaintiffs lack standing to assert their demand that the auction sale should be set aside. They did not participate as bidders, and a plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The entity that did make a bid for plaintiffs' notes, DLJ, planned to hold the notes as plaintiffs' creditor and to restructure the notes so that plaintiffs' properties could be operated.

*Bayvue*, 971 F.Supp. at 132. The Court rejected the plaintiffs' contention that the investment banker was their agent for purposes of bidding at the auction. Consequently, the plaintiffs were not "bidders," and they were not entitled to assert either the rights of any third parties who had participated in the auction, or any broad or general grievances as property owners who provided safe housing to low income families. Essentially, therefore, the Court determined that the plaintiffs in *Bayvue* did not satisfy the prudential considerations for standing and could not maintain the action. See *E.F. Hutton, supra.*

## Application

In the case under consideration, the Debtor does not allege that it submitted any bid at the HUD auction. The misconduct of the Defendants alleged in the Complaint centers exclusively on the favoritism shown by HUD to large investment groups who submitted bids at its auction, to the detriment of other bidders. In paragraph 25 of the Complaint, for example, the Debtor alleges that the marketing of the loans was discussed in the presence of certain bidders, but that *"other bidders* were not privy to such meetings." In paragraph 26, the Debtor alleges that certain institutional investors were provided with proprietary information that was "not available to *other bidders."* In paragraph 27, the Debtor alleges that the Defendants received proprietary information "earlier than all *other bidders,"* or that they received information that was different from the information made available *"to other bidders."* Finally, in paragraph 30, the Debtor alleges that the information furnished to the Defendants gave them "an impermissible and unfair advantage over *other bidders."* (Emphasis supplied.) The only oblique reference to any harm sustained by the Debtor appears in paragraph 36 of the Complaint, where the Debtor generally alleges that the "Defendants' misconduct has resulted in injury to the current creditors and equity holders of the Debtor, and/or Defendants' misconduct conferred an unfair advantage on Defendants." The Debtor does not explain the

nature of the injury or how it was caused by the Defendants' conduct.

Additionally, in its Opposition to the Defendants' Motion to Dismiss, the Debtor seeks to establish that it has sufficiently alleged the necessary elements to state a claim for equitable subordination under Section 510(c). According to the Fifth Circuit Court of Appeals in *In re Mobile Steel Company,* 563 F.2d 692, 700 (5th Cir.1977), one element of the cause of action consists of a showing that the defendant's conduct "must have resulted in injury to the creditors of the bankruptcy or conferred an unfair advantage on the claimant." In addressing this requirement, the Debtor states:

> The Debtor is not claiming that the Defendants' conduct necessarily resulted in injury to the creditors. However, it cannot be disputed that the Defendants' conduct, coupled with the improper access granted by HUD and its employees and contractors to Defendants and its conspirators, gave Defendants an impermissible, unfair and perhaps illegal advantage over other bidders. Complaint ¶¶ 23–28.

Debtor's Opposition to Motion to Dismiss, p. 14. Accordingly, it appears that the Debtor is unable to identify any actual injury that it suffered directly, that the chapter 11 estate suffered, or that the creditors of the estate suffered, even when invited to identify the injury for purposes of stating its cause of action for equitable subordination.

■ In conclusion, even if all of the allegations contained in the Debtor's Complaint are accepted as true for purposes of considering the Motion to Dismiss, the Debtor has failed to demonstrate that either the Debtor or the Debtor's estate suffered any actual injury as a result of any conduct of the Defendants. To the extent that any party was harmed by irregularities or improper favoritism extended at the HUD auction, it appears that the injured parties are the disappointed bidders at the sale. The Debtor did not submit a bid at the auction. Further, even assuming that the Defendants purchased the Mortgage at a "steep discount" (Complaint, ¶ 49), the Debtor has not adequately alleged how the purchase adversely affected the estate. Although the identity of the mortgagee may have changed as a consequence of the sale, there is no allegation that any of the Debtor's contractual rights or obligations under the Mortgage were affected. The Debtor has failed to satisfy the constitutional and prudential requirements for standing.

Since the Court has determined that the Debtor lacks standing to bring this action, it is not necessary to address the alternative basis of the Defendants' Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Accordingly:

**IT IS ORDERED** that the Motion to Dismiss filed by the Defendants, Multifamily Mortgage Trust 1996–1 and LaSalle National Bank, is granted, and this adversary proceeding is dismissed.