**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 5/23/96**

**TENTH CIRCUIT**

_____

| | |
|---|---|
| In re: HEDGED-INVESTMENTS ASSOCIATES, INC., | ) |
| | ) |
| Debtor. | ) |
| | ) |
| -------------------------- | ) |
| | ) |
| HARVEY SENDER, Trustee, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | )     No. 95-1162 |
| | ) |
| ESTILL H. BUCHANAN, a/k/a Mary Estill Buchanan, | ) |
| individually, and as Trustee of the Estill H. Buchanan Trust | ) |
| and as Custodian for Catharine Buchanan and Helen | ) |
| Buchanan under the Uniform Gifts to Minors Act, | ) |
| | ) |
| Defendant-Appellee. | ) |

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 94-C-1314)**

_____

John B. Wasserman (Melody Dawson with him on the briefs) of Katch, Sender & Wasserman, P.C., Denver, Colorado, for Plaintiff-Appellant.

Bruce E. Rohde of Davis & Ceriani, P.C., Denver, Colorado, for Defendant-Appellee.

_____

Before **BRORBY** and **McWILLIAMS**, Circuit Judges, and **KERN**,[*] District Judge.

_____

[*] The Honorable Terry C. Kern, United States District Judge for the Northern District of Oklahoma, sitting by designation.

**BRORBY**, Circuit Judge.

———————————

This case arises out of an elaborate and long-running Ponzi scheme.[1]  As with all Ponzi schemes, this one collapsed and left many innocent investors with significant losses.  The scheme was masterminded and operated by James Donahue, whom a federal district court sentenced to federal prison for his role in the debacle.  In his operation of the scheme, Mr. Donahue utilized a solely-owned corporation and three limited partnerships.  The innocent investors in the scheme purportedly purchased limited partnership interests in the partnerships.  Now that the scheme has collapsed, the corporation and the three limited partnerships are in bankruptcy under Chapter 7 of Title 11 of the United States Code.

Harvey Sender is the trustee in bankruptcy for the four bankrupt entities' estates.  Ms. Buchanan finds herself among the small group of investors who managed to withdraw more money from Mr. Donahue's scheme than they put into it.  Mr. Sender sued Ms. Buchanan under, *inter alia*,[2] Colorado partnership law to recover the money she was overpaid.

The district court entered judgment for Ms. Buchanan after concluding her limited

———————————

[1]  A Ponzi scheme is a fraudulent investment scheme in which "profits" to investors are not created by the success of the underlying business venture but instead are derived fraudulently from the captial contributions of other investors.  *Sender v. Nancy Elizabeth R. Heggland Family Trust (In re Hedged-Investments Assocs., Inc.)*, 48 F.3d 470, 471 n.2 (10th Cir. 1995).

[2]  Mr. Sender also brought avoidance claims under 11 U.S.C. §§ 547 & 548. *See Sender v. Buchanan (In re Hedged-Investments Assocs., Inc.)*, ___ F.3d ___ (No. 95-1059) (10th Cir. May 23, 1996).  The instant case does not implicate these claims.

partnership agreement was not enforceable. We exercise jurisdiction over this appeal under 28 U.S.C. § 1291. *Teton Exploration Drilling, Inc. v. Bokum Resources Corp.*, 818 F.2d 1521, 1524 (10th Cir. 1987). We affirm.

## I. Background

We detailed the basic operation of Mr. Donahue's fraudulent investment scheme in *Sender v. Simon (In re Hedged-Investments Assocs. Inc.)*, ___ F.3d ___ (No. 94-1569) (10th Cir. May 23, 1996), and see no reason to repeat that discussion here.

Ms. Buchanan's involvement with the Hedged Investments fund began in 1978 and 1979, when she executed several limited partnership agreements for HIA L.P. on behalf of herself individually, as trustee for the Estill H. Buchanan Trust, and for her four children under the Uniform Gifts to Minors Act. Acting in these separate capacities, Ms. Buchanan opened a total of six capital accounts in the Hedged Investments fund. Ms. Buchanan contributed about $750,000 to the fund. She withdrew about $2,000,000 before the scheme's collapse in 1990.

Mr. Sender initiated this case in the Bankruptcy Court for the District of Colorado. Claiming "a partner is not entitled to profits never realized," he sued Ms. Buchanan under § 608(2) of the Colorado Uniform Limited Partnership Act of 1981 ("CULPA"), Colo. Rev. Stat. § 7-62-608(2). Section 608(2) provides:

> If a partner has received the return of any part of his contribution in violation of the partnership agreement or this article, he is liable to the limited partnership for a period of six years thereafter for the amount of the contribution wrongfully

3

returned.

Specifically, Mr. Sender claims Ms. Buchanan received returns of her contribution in violation of her partnership agreement.[3] The bankruptcy court heard Mr. Sender's partnership claim pursuant to 28 U.S.C. § 157(c)(1) and, after a trial, issued proposed findings and conclusions recommending Mr. Sender's claim be dismissed. Mr. Sender moved for reconsideration. The bankruptcy court granted the motion, amended its proposed findings and conclusions, and recommended judgment enter in favor of Mr. Sender. Ms. Buchanan filed an appropriate objection in district court pursuant to Fed. R. Bankr. P. 9033. The district court rejected the bankruptcy court's proposed findings of fact and conclusions of law and entered judgment for Ms. Buchanan on Mr. Sender's claim under Colorado partnership law. According to the district court:

> [Ms. Buchanan] was induced to become a partner by way of a fraudulent scheme. Enforcement of the partnership contract only would serve to further the illegitimate Ponzi scheme. Thus, the plaintiff's [partnership law] claim for relief must fail.

Mr. Sender appeals, claiming Ms. Buchanan's partnership agreement is enforceable and that she is liable for payments in violation of the agreement under Colo. Rev. Stat. § 7-62-608(2). Ms. Buchanan presents four reasons why Mr. Sender should not prevail. First, she invokes the district court's reasoning and argues Mr. Sender cannot enforce the partnership agreement because she was induced to enter the agreement by fraud and enforcement of the agreement would violate public

---

[3] Though Mr. Sender has never indicated which bankruptcy estate he represents in this matter, we think the statute he invokes makes it clear that he represents the partnership in which Ms. Buchanan was a limited partner -- section 608(2) makes a limited partner liable "to the limited partnership." There is some dispute among the parties as to which limited partnership Ms. Buchanan belonged, if any, when she received the transfers Mr. Sender seeks to recover. Our decision does not require us to resolve this dispute. In the interest of avoiding confusion, we refer generically to "the limited partnership" or "her limited partnership."

4

policy.  Second, she contends she never became a limited partner in a partnership governed by CULPA.  Third, even if CULPA does apply, she claims she did not receive any distributions in violation of § 608(2) of that Act.  Fourth, Ms. Buchanan contends Mr. Sender is estopped from claiming she received distributions in violation of her partnership agreement.

## II.  Standard of Review

This case comes to us via a relatively unusual route.  The bankruptcy court heard Mr. Sender's state law partnership claim as a non-core proceeding under 28 U.S.C. § 157(c).  Ms. Buchanan did not consent, under § 157(c)(2),[4] to having the bankruptcy court enter a final judgment with respect to the partnership claim; therefore, the bankruptcy court heard the claim pursuant to § 157(c)(1), which provides:

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.  In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

Thus, the district court entered final judgment in this case pursuant to § 157(c)(1).  It did not hear the case in its appellate capacity under 28 U.S.C. § 158(a).  Therefore, our jurisdiction over Mr.

---

[4]  28 U.S.C. § 157(c)(2)

Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

Sender's appeal is based on 28 U.S.C. § 1291, not 28 U.S.C. § 158(d). *Teton Exploration Drilling, Inc. v. Bokum Resources Corp.*, 818 F.2d 1521, 1524 (10th Cir. 1987). Since we are reviewing a final judgment of the district court under § 1291, we are limited in our review to the normally applicable standards. We review the district court's findings of fact for clear error, *Church Mut. Ins. Co. v. Mount Calvary Babtist Church (In re Mount Calvary Babtist Church)*, 70 F.3d 51, 53 (7th Cir. 1995); *see Exxon Corp. v. Gann*, 21 F.3d 1002, 1005 (10th Cir. 1994), and its conclusions of law, including determinations of state law, de novo. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991); *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988).

### III. Analysis

Mr. Sender's claim against Ms. Buchanan is based solely on a provision of CULPA. Therefore, before we can consider the merits of his claim, we must find Ms. Buchanan entered into a valid and enforceable partnership agreement that is subject to CULPA. Furthemore, as we explained in *Sender v. Simon*, Mr. Sender's standing to bring a claim under partnership law against Ms. Buchanan is found in 11 U.S.C. § 541. *See Simon*, ___ F.3d at ___, slip op. at 11. Thus, he stands in the shoes of the debtor partnership and takes no greater rights than the partnership had as of the bankruptcy filing. *Id.* at ___, slip op. at 12.

For the same reasons detailed in *Simon*, Mr. Sender may not use this court as a vehicle for the enforcement of Ms. Buchanan's limited partnership agreement against her. *See Simon*, ___ F.3d at ___, slip op. at 16. We base our decision on "'the elementary principle that one who has himself

6

participated in a violation of law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction.'" *Simon*, ___ F.3d at ___, slip op. at 15 (quoting *Merrill v. Abbott (In re Indep. Clearing House Co.)*, 77 B.R. 843, 857 (D. Utah 1987)). Because we fully explain our position in *Simon*, we need not rearticulate it here.

Mr. Sender does, however, raise an argument in the instant case that he did not present in *Simon*. Mr. Sender contends that by virtue of his status as a bankruptcy trustee he, and therefore the partnership he represents, are immune to any defenses based on Mr. Donahue and HIA Inc.'s wrongdoing. Mr. Sender contends that because he, as trustee, is "trying to rectify the fraud" perpetrated by Mr. Donahue, the misrepresentations attributable to Mr. Donahue and the various entities he once controlled are no longer legally relevant. Mr. Sender points us to the Seventh Circuit's recent decision in *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir.), *cert. denied*, 116 S. Ct. 673 (1995). In *Scholes*, a receiver for corporations used in a Ponzi scheme brought a state law fraudulent conveyance action against an innocent investor who, like Ms. Buchanan, was lucky enough to come away from the scheme with more than he invested. The investor-defendant argued the receiver could not bring a fraudulent conveyance action on behalf of the corporations because the corporations were in complicity with the fraud worked on innocent investors like himself and were therefore subject to the defense of *in pari delicto*. The Seventh Circuit was not persuaded. The court began by recognizing that normally "the maker of the fraudulent conveyance and all those in privity with him -- which certainly includes the corporations -- are bound by it." *Scholes*, 56 F.3d at 754. The court then explained why receivership rendered the normal rule no longer applicable:

But the reason, of course, [for the *in pari delicto* defense], is that the wrongdoer must

7

not be allowed to profit from his wrong by recovering property that he had parted with in order to thwart his creditors. That reason falls out now that [the scheme operator] has been ousted from control of and beneficial interest in the corporations. The appointment of the receiver removed the wrongdoer from the scene. The corporations were no more [the scheme operator's] evil zombies. Freed from his spell they became entitled to the return of the moneys -- for the benefit not of [the scheme operator] but of innocent investors -- that [the scheme operator] had made the corporations divert to unauthorized purposes.

*Id.* Mr. Sender asks us to apply the "evil zombie" rule announced in *Scholes* to this case. Now that the partnership represented by Mr. Sender is free of Mr. Donahue and HIA Inc.'s evil spell, misrepresentations made to Ms. Buchanan are no longer relevant.

Though the Seventh Circuit's reasoning in *Scholes* enjoys a certain appeal, both from doctrinal and public policy perspectives, we cannot adopt it in this case. Put most simply, Mr. Sender is a bankruptcy trustee acting under 11 U.S.C. § 541, and bankruptcy law, apparently unlike the law of receivership,[5] expressly prohibits the result Mr. Sender urges.

For the same reasons discussed in *Simon*, Mr. Sender's standing in this case is based on 11 U.S.C. § 541. *Simon*, ___ F.3d at ___, slip op. at 11. Under § 541, the estate over which the appointed trustee is given control "is comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Causes of action belonging to the debtor fall within this definition. *Simon*, ___ F.3d at ___, slip op. at 10-11; *Mixon v. Anderson (In re Ozark Restaurant Equip. Co.)*, 816 F.2d 1222, 1225 (8th Cir.), *cert. denied*, 484 U.S. 848

---

[5] The case *sub judice* does not implicate the law of receivership, and nothing we say herein should be construed as applicable to that area of law or as a comment on the validity of the rule announced in *Scholes*, 56 F.3d 750.

(1987). We emphasize § 541(a)(1) limits estate property to the debtor's interests "as of the commencement of the case." This phrase places both temporal and qualitative limitations on the reach of the bankruptcy estate. In a temporal sense, it establishes a clear-cut date after which property acquired by the debtor will normally not become property of the bankruptcy estate. *See generally* 4 Collier on Bankruptcy ¶ 541.05. In a qualitative sense, the phrase establishes the estate's rights as no stronger than they were when actually held by the debtor. *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1154 n.7 (3d Cir. 1989). Congress intended the trustee to stand in the shoes of the debtor and "take no greater rights than the debtor himself had." H.R. Rep. No. 595, 95th Cong., 1st Sess. 368, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6323. Therefore, to the extent Mr. Sender must rely on 11 U.S.C. § 541 for his standing in this case, he may not use his status as trustee to insulate the partnership from the wrongdoing of Mr. Donahue and HIA Inc.[6]

To be sure, Mr. Sender articulates sound reasons why it might be wise to allow an exception to this rule in cases, such as this one, where the trustee's efforts stand to benefit hundreds of innocent investors. However, to paraphrase the Supreme Court, the issue is not whether such an exception would make good policy but whether the exception can be found in the Bankruptcy Code. *See Central Bank v. First Interstate Bank*, 114 S. Ct. 1439, 1448 (1994). Neither the text of the Code

---

[6] It is important to note that not all state law claims brought by a trustee are properly brought under 11 U.S.C. § 541. A trustee is empowered under 11 U.S.C. § 544(b) to "avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim." This provision is typically invoked by trustees to pursue state law fraudulent transfer or conveyance claims. *See, e.g.*, *Hayes v. Palm Seedlings Partners-A (In re Agricultural Research & Technologyl Group, Inc.)*, 916 F.2d 528, 534-40 (9th Cir. 1990) (Ponzi scheme context). As we explained in *Simon*, Mr. Sender's partnership law claims do not meet the requirements of § 544(b); they are brought pursuant to § 541. *Simon*, ___ F.3d at ___-___, slip op. at 8-12. Accordingly, nothing we say in the instant case applies to the breadth of a trustee's avoidance powers under § 544(b).

9

nor its legislative history suggests any exceptions to the principle that the strength of an estate's cause of action is measured by how it stood "as of commencement of the case." 11 U.S.C. § 541(a)(1). It falls beyond the province of this court to let policy considerations override our interpretation of the text and clear intent of an act of Congress, unless we are faced with the "rare and exceptional circumstance[]" that such a reading would require a result "so bizarre that Congress 'could not have intended' it." *Demarest v. Manspeaker*, 498 U.S. 184, 190-91 (1991) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982)). This is not such a circumstance.

The decision of the district court is **AFFIRMED**.