HANNOVER CORPORATION OF AMER-ICA, Place Vendome Inc., and Place Vendome Corporation of America

v.

Donald BECKNER, Michael K. Wolensky, Kutak Rock, Tynes Fraser & Roach, Jack G. Wheeler, The Home Insurance Company, St. Paul Reinsurance Company, Ltd., Zurich re (UK, Limited); Compagnie D'Assurances Maritimes Aeriennes Et Terrestres, Anglo American Insurance Company Limited, Aegon Insurance Company (UK Limited), Certain Underwriters of Lloyd's, and Evanston Insurance Company.

Civil Action No. 96–237.

United States District Court, M.D. Louisiana.

July 31, 1997.

Frederick R. Tulley, John Ashley Moore, Taylor, Porter, Brooks and Phillips, Baton Rouge, LA, David John Messina, Taylor, Porter, Brooks and Phillips, New Orleans, LA, for Plaintiff.

Robert B. Bieck, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, Gary G. McKenzie, Monroe & Lemann, Baton Rouge, LA, John R. Keogh, Keogh, Cox & Wilson, Ltd., Baton Rouge, LA, Christopher D. Matchett, Matchett, Verbois, Futrell & Henchy, Baton Rouge, LA, William E. Wright, Jr., Deutsch, Kerrigan & Stiles, New Orleans, LA, Mark Benjamin Holton, Correro, Fishman, Haygood, Phelps, Weiss, Walmsley & Casteix, New Orleans, LA, Patrick F. McGrew, New Orleans, LA, for Defendant.

*ORDER AND REASONS*

BERRIGAN, District Judge.

This matter is before the Court on motions to dismiss filed by DonaLd L. Beckner ("Beckner") and The Home Insurance Company ("Home Insurance"). Having considered the record, the parties' arguments, and the applicable law, the Court denies the motions.

I. BACKGROUND

A. HISTORY

The plaintiffs in this matter, Hannover Corporation of America, Place Vendome, Inc., and Place Vendome Corporation of America ("plaintiffs" or "the plaintiff corporations"), are acting through their appointed receiver, William Hays, Jr.

Hays was appointed a Federal Court Receiver by order of Judge Livaudais, U.S. District Judge, Eastern District of Louisiana, on July 29, 1992. The appointment was contained in the judge's order granting summary judgment and imposing a permanent injunction and other equitable relief in *SEC v. Sam Recile, et al.,* Civil Action 91–1422.

The proceeding before Judge Livaudais involved an SEC enforcement action brought against the plaintiff corporations, Sam Recile, and Virgie Rae Phillips. Recile and Phillips formed and controlled the plaintiff corporations for the purpose of developing a shopping mall in Louisiana—Place Vendome Mall. While Phillips was the president and sole stockholder of the plaintiff corporations, Recile was in charge of major decisions concerning the Place Vendome project, including raising funds to develop the mall. Recile and others associated with him and the plaintiff corporations solicited funds from investors by selling "pre-acquisition investment units," which were written instruments in the form of letter agreements. The agreements were issued by the plaintiff corporations, along with notes, and promised returns, or "bonuses," as Recile called them, of 100 percent or more over periods as short as six months.

Because no registration statement was filed with the SEC with respect to the solicitation of funds, the SEC brought an enforcement action against the plaintiff corporations, Recile, and Phillips. Defendant Donald L. Beckner, d/b/a Donald L. Beckner and Associates, was engaged by the plaintiff corporations, Recile, and Phillips around April 1991 to defend against this SEC lawsuit. Beckner appeared in the litigation as counsel of record until withdrawing on June 22, 1992.

On about July 29, 1992, Judge Livaudais granted the SEC's summary judgment motion and permanently enjoined the defendants from, among other things, violating federal securities laws. The order treated the different defendants with different degrees of severity. Phillips was ordered to disgorge approximately $609,809 plus prejudgment interest, while Recile was ordered to disgorge approximately $15,149,538 plus prejudgment interest. On February 2, 1994, Judge Livaudais entered a final judgment in the enforcement action against the corporations, Recile and Phillips. Hays' appointment as receiver has not been terminated.

The corporations subsequently became debtors-in-possession pursuant to a liquidating plan of reorganization in a substantively consolidated chapter 11 bankruptcy proceeding filed September 23, 1992 in U.S. Bankruptcy Court for the Middle District of Louisiana. In this proceeding, before Bankruptcy Judge Brown, Hays has acted as administrator of the debtors-in possession.[1]

### B. PROCEEDING BEFORE THIS COURT

In the litigation before this Court, the plaintiff corporations have brought negligence and malpractice claims against their attorneys, including Beckner (Count Four of Plaintiffs' Second Amended Complaint) and claims against the attorneys' professional liability insurers, including Home Insurance (Count Five of Plaintiffs' Second Amended Complaint). The plaintiff corporations allege that Beckner breached an attorney's duty of reasonable care and professional responsibility. The alleged breaches include preferring the interests of Sam Recile over the interests of the corporations, failing to advise the corporations that Recile was violating securities laws and the injunctions in the SEC action by continuing to solicit and raise investor funds, failing to advise the corporations that Recile was looting and mismanaging the corporations' assets, and failing to properly advise the corporations on steps that could be taken to protect the debtors' assets from looting, mismanagement and waste. The plaintiff corporations also allege that their attorneys breached their duty of reasonable care and professional responsibility by drafting and presenting pleadings in the SEC action which failed to disclose ongoing violations of the law and injunctions, and which understated the amount of money raised by the corporations and the debt incurred. The plaintiff corporations further allege breaches due to the attorneys' drafting of letters to investors. These letters allegedly sought the investors' acceptance of less than the full amount of the debt owed to them on the assumption that the money for these payments would come from third party loans to the project, without making reasonable inquiry into the viability of these loans and without first determining whether Recile was continuing to promise investors double-their-money plus interest.

### C. THE MOTIONS

Defendants Donald L. Beckner and The Home Insurance Company have each filed motions to dismiss. Both of these motions simply adopt the grounds and arguments made in the motion to dismiss filed by Kutak Rock, et al. (Rec.Doc. 104) ("Kutak's mo-

---

1. Judge Brown approved Hays' appointment as manager and administrator of the debtors in the

tion").[2] The Kutak Rock defendants ("Kutak") are not named in the first three counts of the complaint, which only involve Beckner, and which seek to void transfers made to Beckner pursuant to the bankruptcy code. (*See* Second Amended Complaint.) Accordingly, the motion before the Court does not address those claims.

Kutak's motion sought dismissal of claims related to negligence and malpractice pursuant to Federal Rule of Civil Procedure 12(b)(6). Kutak argued that the plaintiff corporations lack standing to sue their attorneys for negligence based upon two grounds:

1) "[A] corporate debtor has no standing to assert a claim for damages that are nothing more than the unpaid obligations of the debtor to investors." (Kutak's Memo. at 2).

2) A plaintiff corporation cannot recover damages from fraud which the corporation was aware of and in which it participated. (Kutak's Memo. at 3).

Movants refer to their second argument as their *in pari delicto doctrine* argument. (*E.g.,* Kutak's Reply Memo. at 3 n. 1). The Court will similarly refer to this argument as the *in pari delicto* argument.

Before addressing the merits of these arguments, the Court notes the procedural history behind these motions. On February 15, 1994, Kutak filed a motion to dismiss while this matter was before Bankruptcy Judge Brown. This motion raised Constitutional standing as well as *in pari delicto* arguments similar to the ones presented in the motions now before the Court. (*See* Bankruptcy Proceeding Record p. 67). Judge Brown denied the motion on March 22, 1994. Kutak moved Judge Polozola to grant an appeal of Judge Brown's ruling, but that motion was denied on November 3, 1994.[3] Kutak argued that this Court should evaluate the pending mo-

tion unaffected by Judge Brown's prior decision because of significant legal and factual developments. Legally, Kutak claims that *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085 (2nd Cir.1995) and *Terlecky v. Hurd (In re Dublin Sec., Inc.),* 197 B.R. 66 (S.D.Ohio 1996) are precedential and decisive. (*See e.g.,* Kutak's Reply Memo. at 2). Factually, Kutak cites certain answers to interrogatories and deposition testimony of Receiver Hays which they consider to constitute significant factual developments. The Court is unpersuaded that any "significant" legal or factual developments have occurred since Judge Brown's ruling. For reasons set forth further in the analysis that follows, the Court rejects the assertion that the Second Circuit and district court cases are precedential or decisive to this matter; the Court also does not consider the evidence Kutak cites to substantially bear upon Beckner and Home Insurance's motions.

The Court considers the present motions bound by Judge Brown's prior rulings; nonetheless, it addresses the merits of the motions. Among other reasons, the Court does so due to three considerations: 1) this order is consistent with Judge Brown's ruling; 2) Beckner and Home Insurance, not the Kutak defendants, are now the moving parties; and 3) Judge Brown was able to resolve the motions before him without any written reasons. (*See* Bankruptcy Proceeding Record p. 90 (denying Kutak's motion for reasons orally assigned)). To the extent that Judge Brown's ruling affects the matters raised in the present motions, the Court considers this order to set forth additional and alternative bases for denial of the motions.

## II. DISCUSSION

### A. STANDARD OF REVIEW

Plaintiffs contend that the Court should evaluate the standing issue based upon the

---

bankruptcy action in a December 13, 1992 order.

**2.** The Kutak Rock defendants have reached a settlement with the plaintiff corporations and have been dismissed from this matter.

**3.** Bankruptcy reference was withdrawn regarding this non-core procceding on February 1, 1995 and the matter was assigned the Judge Polozola of the Middle District of Louisiana. After Judge Polozola recused himself, this matter was referred to this Court on October 12, 1995.

standard of whether a plausible foundation exits for their claims. In support of this argument, plaintiffs cite *Williamson v. Tucker*, 645 F.2d 404 (5th Cir.1981), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). Plaintiffs state:

> The court in *Williamson* found that under the standard of *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 ([1946]), a claim cannot be dismissed for lack of subject matter jurisdiction to dismiss under the standard of whether the plaintiff's claim "has no plausible foundation" or is "clearly foreclosed by a prior Supreme Court decision." 645 F.2d at 416.

(Pls.' Memo. at 4).

■ Plaintiffs fail to point out, however, that the *Williamson* court applied the *Bell v. Hood* standard because the challenge to jurisdiction was also a challenge to the existence of a federal cause of action. *Williamson*, 645 F.2d at 415.[4] The *Bell v. Hood* standard is inapplicable to motions to dismiss that do not challenge the existence of a federal cause of action. *Id.* As the *Williamson* court explicitly stated, "Conversely, a jurisdictional attack which does not implicate the merits of any federal cause of action is not bound by the strict *Bell v. Hood* standard." *Williamson*, 645 F.2d at 415 fn. 9. This matter does not involve a federal cause of action; accordingly, the Court rejects plaintiffs' suggestion that *Bell v. Hood* as interpreted by *Williamson* applies.

■ The party seeking to assert standing has the burden of alleging facts demonstrating that standing exists. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 607–608, 107 L.Ed.2d 603 (1990). Standing must affirmatively appear in the record. *Id.* A district court has the power to dismiss for lack of subject matter jurisdiction based upon three separate bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts

plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413.

Movants seek dismissal based upon the allegations of the Complaint and the record facts developed outside the Complaint. Movants also have stated that no resolution of disputed facts is necessary to decide this motion. The Court finds it possible to resolve the motions in favor of the plaintiffs based upon either the complaint alone or upon the complaint supplemented by undisputed facts evidenced in the record.

## B. GROUND ONE: INJURY

Kutak summarizes its first grounds for dismissal in the heading to that section: "Because the damages alleged were sustained, if at all, by investors, the plaintiff corporations lack standing to pursue those claims." (Kutak's Memo. at 12). Kutak primarily puts forth two cases to support this legal principal: *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2nd Cir.1995) and *Terlecky v. Hurd (In re Dublin Sec., Inc.)*, 197 B.R. 66 (S.D.Ohio 1996). Kutak has stated that this argument is a jurisdictional challenge and "is not based upon the alleged absence of an element of the negligence/malpractice cause of action." (Kutak's Reply Memo. at 3).

■ Thus, Kutak's first grounds rests upon the injury requirement of standing. The determination of standing involves both Constitutional limitations on federal court jurisdiction as set forth by Article III and prudential limitations the federal judiciary has imposed upon itself. *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607–1608, 60 L.Ed.2d 66 (1979). Among other requirements of standing, the plaintiff must allege that it has suffered some distinct or palpable injury to itself, though this injury may be shared by a large class of other possible litigants. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). This injury requirement is one of the Constitutionally mandated elements of

4. *Williamson* involved a federal cause of action based upon the Securities Act of 1933 and the Securities Exchange Act of 1934.

standing. *Id.*, 422 U.S. at 500–502, 95 S.Ct. at 2206–2207.

 The Court rejects defendants' argument that any damages could have been sustained only by the defrauded investors. Specifically, the Court notes that the aggravation of insolvency or prolonging the life of an insolvent business has been considered to constitute injury to the corporation. *Schacht v. Brown,* 711 F.2d 1343, 1347–48 (7th Cir. 1983), *cert. denied,* 464 U.S. 1002, 104 S.Ct. 508, 509, 78 L.Ed.2d 698 (1983). As movants have noted, the plaintiff corporations' alleged damages include the amount of indebtedness incurred. Plaintiffs have further alleged aggravation of insolvency and artificial extension of life in their claims that Beckner's malpractice caused mismanagement, waste, and looting of their assets.

Movants acknowledge this "apparently contradictory authority," but argue that the Court should disregard *Schacht* and instead follow *Hirsch* and *Terlecky*—cases which movants characterize as "controlling precedent." This Court, however, declines to read the Second Circuit opinion and district court opinion as more than persuasive authority. Furthermore, the Court is unconvinced that *Hirsch* and *Terlecky,* even if they were controlling, would establish that plaintiffs in this matter lack standing due to lack of distinct injury.

1. *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085 (2nd Cir.1995)

*Hirsch* involved a suit by a chapter 11 trustee against the debtors' accountants and law firms for breach of contract and fiduciary duty, negligence, negligent misrepresentation, fraud, and RICO violations arising from a Ponzi scheme. Arthur Andersen and Company, one of the debtors' accountants, had played the lead role in preparing false and misleading private placement memoranda ("PPMs") through which the Ponzi schemes were carried forward.

The district court dismissed the charges against the accountants and law firms due to lack of standing. Upon appeal, the Second Circuit looked at two issues regarding standing: 1) whether the trustee had standing to bring suit regarding the distribution of misleading PPMs to investors; and 2) whether the trustee had standing to bring suit regarding the provision of deficient professional services directly to the debtors. *Hirsch,* 72 F.3d at 1092.

With respect to the distribution of misleading PPMs to investors, the Second Circuit noted that the investors had a cause of action under Connecticut law and that class actions were being prosecuted by the defrauded investors. The court concluded that the trustee did not have standing to sue regarding the distribution of the misleading PPMs. Plaintiffs' citations to standing generally arise from this section. However, this holding did not include the claims predicated upon professional malpractice alleged to have injured the debtors.

While the *Hirsch* court found that the trustee did not have standing to sue for the PPMs because those claims belonged to investors, it *separately* considered the issue of whether the trustee had standing to sue for professional malpractice—"There remain for consideration, however, the claims that are predicated upon professional malpractice alleged to have injured the Debtors." *Hirsch,* 72 F.3d at 1094. The Second Circuit found that the trustee could not bring such claims; however, this finding was not based upon lack of distinct injury, but upon an *in pari delicto*-type analysis. *Hirsch,* 72 F.3d at 1094–1095. After conceding that some independent financial injury to the Debtors might be established, the court stated,

> In any event, we are persuaded that the *[Shearson Lehman Hutton v.] Wagoner[,* 944 F.2d 114 (2d Cir.1991)] rule should be applied here, and that [the trustee] is precluded from asserting the professional malpractice claims alleged in the Complaint because of the Debtors' collaboration with the defendants-appellees in promulgating and promoting the Colonial Ponzi schemes.

*Hirsch,* 72 F.3d at 1094.

Accordingly, *Hirsch* does not contradict the principle that a corporation can suffer

injury from fraudulently extended life, dissipation of assets, or increased insolvency. Furthermore, the Court finds that *Hirsch's* holding regarding injury caused by an accountant's distribution of PPMs does not directly apply to this matter. *Hirsch's* analysis regarding *in pari delicto* is more appropriately applied to movants' second argument—the *in pari delicto* argument.

2. *Terlecky v. Hurd (In re Dublin Securities, Inc.),* 197 B.R. 66 (S.D.Ohio 1996)

The district court opinion in *Terlecky* is also distinguishable. In *Terlecky,* the district court recognized that the *Hirsch* court did not rule based upon the injury issue, but instead ruled based upon the debtors participation in the fraud. *Terlecky,* 197 B.R. at 71. Furthermore, the *Terlecky* court found that the rationale of *Hirsch* was based upon the fact that the defrauded investors had direct avenues of relief against the defendant attorneys. The Court finds *Terlecky's* application of *Hirsch* inapplicable to this matter in regards to the injury issue.

The *Terlecky* court separately found an absence of standing by applying the factors set forth in *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972). The *Terlecky* court found, "The third concern of the *Caplin* Court is particularly significant as applied to the instant case. The Court in *Caplin* opined that the trustee's claims might interfere with the independent efforts of debenture holders pursuing directly their own claims...." *Terlecky,* 197 B.R. at 74. The *Terlecky* court was concerned that pursuing the claims through the bankruptcy estate would be inefficient and that allowing the trustee to sue would interfere with pending class actions. *Terlecky,* 197 B.R. at 73. These practical concerns are not present in this matter.[5] No individual suits are pending in this matter, and movants have stated that 96% of any net recovery would go to the investors. Furthermore, the Court is unpersuaded that a class action provides any less clumsy of a mechanism for recovery than this suit. *See Scholes v. Lehmann,* 56 F.3d 750, 755 (7th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 673, 133 L.Ed.2d 522 (1995) (Posner, J.).

Thus, the Court finds that *Hirsch* and *Terlecky* do not represent a generalized principal which establishes that plaintiffs' suit should be dismissed due to lack of a distinct injury.[6] While movants predicate their motion upon the strength of *Hirsch* and *Terlecky,* these cases are inapplicable to this matter and the Court rejects the legal basis for movants' first argument.

Even though *Hirsch* and *Terlecky* are inapplicable, the Court nonetheless notes movants' argument that the Court should consider undisputed facts in the record when addressing *Hirsch* and *Terlecky.* Specifically, movants point to two matters: 1) interrogatory answers provided to Kutak by the plaintiff corporations; and 2) deposition testimony by Receiver Hays. Movants argue that the interrogatory answers and deposition testimony provide a characterization of the damages which shows that standing does not exist. However, the Court finds this evidence immaterial to the standing issue presented in this motion. The Court first notes that the interrogatory answers

---

**5.** In regards to securities actions, Beckner has stated that he considers any investor causes of action to be prescribed.

**6.** Movants also assert that the differences in state law are inconsequential to an application of *Terlecky* or *Hirsch* to this matter, which is governed by Louisiana state law. Movants state, "The standing inquiry, of constitutional dimension, cannot be affected by Congress, much less by variations in state law." It is true that Congress cannot waive the Article III's injury-in-fact requirement; however, movants are incorrect to suggest that the inquiry into whether or not injury exists is unaffected by the applicable state or federal law. This Court rejects the idea that injury must be a transcendent or immutable concept floating above the applicable law. As the Supreme Court has stated, "The actual or threatened injury required by Article III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing....'" *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975) (citations omitted).

provided to Kutak address damages alleged against the Kutak defendants. The answers are not directly relevant to the remaining movants—Beckner and Home Insurance. The Court further notes that a party's description of its claims is not controlling for purposes of evaluating standing, even under the Second Circuit line of cases movants cite. *See CEPA Consulting, Ltd. v. King Main Hurdman (In re Wedtech Sec. Litig.)*, 138 B.R. 5, 7–8 (S.D.N.Y.1992) ("*Wagoner* demonstrated that a party's own description of its claims, however, is not controlling. Thus, while plaintiff's own confusion is not helpful, we will not rely upon its characterization of the claims.").

Both upon the complaint and upon the undisputed facts in the record, the Court considers that plaintiffs have sufficiently established a distinct injury for purposes of standing.

## C. GROUND TWO: FRAUD

■ Movants next argue that even if particular injury exists, plaintiffs lack standing due to plaintiffs' participation in fraud.[7] Movants assert that *in pari delicto* factors establish that plaintiffs do not have standing.

### 1. CONSTITUTIONAL REQUIREMENTS

Kutak's motion first argues that *in pari delicto* implicates the requirements of Constitutional standing, such as set forth by *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Movants argue that plaintiffs lack standing based upon the linkage of two proposition. First, movants assert, "Where the plaintiff knows the facts of its wrongful conduct, a second party's failure to bring those facts to light logically and legally causes no harm to the plaintiff." Movants cite two cases in support of this first proposition: *FDIC v. Ernst & Young*, 967 F.2d 166 (5th

Cir.1992) and *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449 (7th Cir.1982), *cert. denied*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982). Based upon this supposition, movants reason,

> Thus, the plaintiffs lack standing because they cannot show that their alleged injury is traceable to Kutak's claimed malpractice, as required by the second element of the constitutional standing test. *See Valley Forge Christian College, supra*, 454 U.S. at 472, 102 S.Ct. at 758.

The Court rejects both steps of movants' theory. It does not consider *Ernst & Young* or *Cenco* applicable to this matter, and it does not find the *in pari delicto* related holdings of *Ernst & Young* or *Cenco* applicable to any holding in *Valley Forge*.

First, the Court rejects the broad holding movants wish to ascribe to *Ernst & Young* and *Cenco*—i.e., that as a matter of law, plaintiffs cannot have been injured in this matter because it knew "the facts of its wrongful conduct." Neither case establishes a universal principle of *in pari delicto* relevant to standing that exists irrespective of the relevant applicable law—i.e., Louisiana law in this matter.

In *Ernst & Young*, the FDIC was acting as a receiver for a failed savings and loan association. The savings and loan was dominated and controlled by a sole owner who was the chairman, chief operating officer, chief executive officer, and member of the executive, loan, audit, compliance, and credit policy committees. The FDIC brought a negligence action under Texas state law against an accounting firm that had audited the association. The district court granted the accounting firm's motion for summary judgment. The Fifth Circuit affirmed the grant of summary judgment. Specifically, the court found that a negligence cause of action under Texas law required reliance. The Fifth Circuit found that the dominant sole owner did not rely upon the accounting

---

7. As noted above, the Court adopts movants' reference to this argument as their "*in pari delic-* *to* argument."

firm's audit, that the knowledge of the dominant sole owner was imputable to the corporation, and that accordingly there was no negligence action because there was no reliance. *Ernst & Young*, 967 F.2d at 170–72.

The Court first observes that *Ernst & Young* does not address the issue of injury as it relates to standing or to the principles movant set forth from *Valley Forge.*

Secondly, *Ernst & Young* is entirely inapplicable to this matter for a myriad of reasons. Most significantly as a matter of law, *Ernst & Young*'s legal holding regarding Texas state law negligence actions is inapplicable to this Louisiana state law negligence and malpractice action. The facts relied upon in *Ernst & Young* are also distinguishable from this matter. The Fifth Circuit's own language most succinctly summarizes *Ernst & Young*'s inapplicability both legally and factually:

> [W]e are not holding that an auditor is never liable to a corporation when a corporation's employee or agent acts fraudulently on the corporation's behalf. We limit our holding narrowly to the *facts of this case under Texas law*—i.e., the FDIC, as the assignee of a corporation with a dominating sole owner, sues an auditor for negligently performing an audit upon which neither the owner nor the corporation relied.

*Ernst & Young*, 967 F.2d at 172 (emphasis added). In this matter, Recile, the main person involved in the fraud, was not a director nor owner of the corporations. The role ascribed to Recile in plaintiffs' complaint is significantly different from the role Phillips is alleged to have held. Furthermore, the Court notes that specific judgments against Recile and Phillips, such as the disgorgement ordered, differed significantly.[8]

In sum, *Ernst & Young* does not represent the universal principle movants assert,

"Where the plaintiff knows the facts of its wrongful conduct, a second party's failure to bring those facts to light logically and legally causes no harm to the plaintiff." *Ernst & Young* does not establish that any such *in pari delicto* principle is applicable to this matter regarding standing.

The Court similarly rejects movants' characterization of the Seventh Circuit's holding in *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449 (7th Cir.1982), *cert. denied*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982). In *Cenco*, the Seventh Circuit interpreted *Illinois law* on auditor liability. It found that under Illinois law, the auditors of a corporation could use the wrongdoing of the corporation's managers as a defense against charges of breach of contract, professional malpractice, and fraud. *Cenco*, 686 F.2d at 456. In arriving at its holding, the Seventh Circuit also considered at length the issues of perverse/inequitable recovery and deterrence.[9] The Court declines to find *Cenco*'s interpretation of Illinois state law regarding defenses to auditor liability applicable to the standing issues in this Louisiana state law negligence and malpractice action.

Not only do *Ernst & Young* and *Cenco* not apply to the facts of this matter, but furthermore their holdings regarding fraud do not relate to movants' citation to *Valley Forge.* Kutak's citation to *Valley Forge* presumably refers to the Supreme Court's summarization of Article III's requirements. The Supreme Court noted that a plaintiff must show that the injury "fairly can be traced to the challenged action." *Valley Forge*, 454 U.S. at 471, 102 S.Ct. at 758 (quoting *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976)). While the Supreme Court made this statement as a summarization of its past case law, the actual holding related to the plaintiff's inability to establish a personal injury

---

8. While unnecessary to the Court's findings, it is also notable that Phillips, by way of affidavit, essentially denies that she knew of Recile's wrongdoing while Beckner was enrolled as her attorney. This affidavit places into dispute whether Recile's knowledge could be imputed to Phillips or other officers and members of the corporations' board.

9. Factually, the Court further notes that the Seventh Circuit found that fraud had permeated the top management of the company in *Cenco.*

for purposes of standing, not the issue of traceability. *Valley Forge,* 454 U.S. at 485, 102 S.Ct. at 765. None of the cases movants cite support dismissal based upon the failure to meet the Constitutional requirement that the injury be fairly traced to the alleged misconduct of defendants.

## 2. PRUDENTIAL OR STATUTORY CONSIDERATIONS

While movants raise the *in pari delicto* argument as a Constitutional standing issue, the Court · notes that it would · also reject movants' arguments even if premised upon prudential or statutory considerations. The Court finds *Scholes v. Lehmann,* 56 F.3d 750 (7th Cir.1995), *cert. denied,* ⸻ U.S. ⸻, 116 S.Ct. 673, 133 L.Ed.2d 522 (1995), while not controlling upon this case, most persuasive.

*Scholes* involved a *Ponzi* scheme established by an individual named Michael Douglas. Douglas created three corporations and caused them to create limited partnerships in which the corporations would be the general partners and would sell limited-partner interests to the investing public, representing returns of 10 to 20 percent per month. By the time the scheme collapsed, the corporations had raised $30 million from the sale of limited-partner interests. Douglas was prosecuted for fraud, pleaded guilty, and was sentenced to 12–years in prison.

The SEC also brought a civil suit against Douglas and the three corporations, charging multiple violations of federal securities law. During this proceeding, the district court appointed a receiver for the corporations.

The receiver brought suit against several parties to recover alleged fraudulent conveyances. The district court granted summary judgment for the receiver against all of the defendants. Upon appeal, the Seventh Circuit considered whether the receiver had standing to bring the suits.

For purposes of standing, the court analogized an equity receiver to a trustee in bankruptcy: "Like a trustee in bankruptcy or for that matter the plaintiff in a derivative suit, an equity receiver may sue only to redress injuries to the entity in receivership, corresponding to the debtor in bankruptcy and the corporation of which the plaintiffs are shareholders in the derivative suit." *Scholes,* 56 F.3d at 753 (citations omitted).

The court noted that the corporations were involved in the principal's fraud: "Though injured by Douglas, the corporations would not be heard to complain as long as they were controlled by him, not only because he would not permit them to complain, but also because of their deep, their utter, complicity in Douglas's fraud." *Scholes,* 56 F.3d at 754.

Nonetheless, the Seventh Circuit found that the receiver had standing to bring claims on behalf of the corporations for fraudulent conveyances. Specifically, the court looked at the rationale underlying the *in pari delicto* doctrine—that the wrongdoer must not be allowed to profit from his wrong by recovering property that he had parted with in order to thwart his creditors. The court noted that this reason for the *in pari delicto* defense vanished upon the appointment of the receiver and removal of the wrongdoer from control and beneficial interest in the corporations.[10] *Id.* In sum, Judge Posner stated, "[t]he defense of in pari delicto loses its sting when the person who is in pari delicto is eliminated." *Id.*

Movants suggest that *Scholes* is inapplicable to this case, citing *Sender v. Buchanan (In re Hedged–Investments Associates, Inc.),* 84 F.3d 1281 (10th Cir.1996). In *Sender,* the Tenth Circuit stated,

Though the Seventh Circuit's reasoning in *Scholes* enjoys a certain appeal, both from doctrinal and public policy perspectives, we cannot adopt it in this case. Put most simply, Mr. Sender is a bankruptcy trustee acting under 11 U.S.C. § 541, and bankruptcy law, apparently unlike the law of receivership, expressly prohibits the result Mr. Sender urges.

*Sender,* 84 F.3d at 1285.

The Court notes as an initial matter that the *Scholes* court considered some of the

---

**10.** The Court also notes one bankruptcy court's generalized statement that a receiver represents the rights of creditors and is not bound by former corporate officers' or directors' fraud. *McHale v. Huff (In re Huff),* 109 B.R. 506, 513 (Bankr.S.D.Fla.1989).

same basic principles as the bankruptcy cases, e.g. *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195, when it analyzed the *in pari delicto* issue. *See Scholes*, 56 F.3d at 753–54. For example, the *Scholes* court analogized the standing concerns for an equity receiver to those for a bankruptcy trustee. *Scholes*, 56 F.3d at 753–54.

Furthermore, the Court finds *Sender's* analysis inapplicable to this matter on several factual grounds. First, *Sender* involved a chapter 7 trustee. The *Sender* court noted, "The case sub judice does not implicate the law of receivership, and nothing we say herein should be construed as applicable to that area of law or as a comment on the validity of the rule announced in Scholes." *Sender*, 84 F.3d at 1285 n. 5 (citation omitted). Unlike *Sender*, there is no chapter 7 trustee in this matter. Nor has Receiver Hays ever been appointed trustee in the plaintiff corporations' chapter 11 bankruptcy.

Movants argue that Hays can only act in his capacity under the bankruptcy code, and that he is no longer a receiver, citing 11 U.S.C. § 105. Section 105 states that a court may not appoint a receiver in a case under this title. However, movants have not provide & any law for the proposition that Hays does not retain capacity in his previously established capacity as Court-appointed receiver.

Furthermore, the *Sender* court's reasoning was based in part on the fact that the trustee in that matter held no greater rights than the debtors' interests at the commencement of the case. In this matter, Hays was appointed federal receiver before the plaintiff corporations entered chapter 11 bankruptcy. Thus, the corporations were freed from the sting of *in pari delicto* prior to plaintiffs' commencement of bankruptcy proceedings. In this respect, *Sender* and *Scholes* are not irreconcilable in this matter.

The Tenth Circuit noted that *Scholes* was appealing doctrinally and policy-wise, but that it could not adopt *Scholes* because of the chapter 7 trustee's capacity. Hays' pre-bankruptcy established role as receiver distinguishes the *Sender* court's concerns, and this Court finds *Scholes* highly persuasive, both for its legal logic and common sense approach.

In conclusion, movants fail to provide a sound basis for denying plaintiffs' standing due to *in pari delicto* and the Court finds that plaintiffs' standing is unaffected by *in pari delicto*-related issues.

### 3. EQUITABLE OR AFFIRMATIVE DEFENSE

Any *in pari delicto* arguments might be properly considered an affirmative defense. Indeed, in Home Insurance's most recent correspondence to the Court (May 28, 1997 letter to Judge Feldman including summary of this motion to dismiss), it described this second grounds of the motion to dismiss as an "estoppel defense." Home Insurance explicitly separated the first grounds, which it summarized as based on lack of standing, from this "estoppel issue." The Court further notes that the Second Circuit's discussion of fraud in *Hirsch* shows that it found the issue of standing analytically distinct from the issue of whether the trustee would be barred from proceeding due to the debtors participation in the fraud. *Hirsch*, 72 F.3d at 1095.

The Court finds it unnecessary to address the second argument as it relates to a defense for a number of reasons. First, Kutak's motion, which Beckner and Home Insurance have simply adopted, moves for dismissal only upon the grounds the standing is absent. Both *in pari delicto* subsections of the memorandum are based upon standing.[11]

Furthermore, Kutak's motion is brought procedurally pursuant to Federal Rule of

11. Footnote 12, in subsection one, notes that even if Kutak failed to inform authorities, "standing still does not exist." Footnote 13, in subsection two, distinguishes a Ninth Circuit case because "[s]tanding was not raised as an issue in

*O'Melveny*, which was decided upon California law." While Kutak acknowledges in footnote one of its reply memorandum that the *in pari delicto* argument may be in part an affirmative

Civil Procedure 12(b)(1). Any merits-based argument: movants would assert regarding an affirmative or estoppel defense is not properly brought under Rule 12(b)(1).[12]

Finally, any *in pari delicto* affirmative defense to the state law claims of negligence and malpractice in this matter would be determined by Louisiana law. The motions fail to discuss Louisiana law and provide no basis for why defendants are entitled to an affirmative defense under Louisiana law.[13]

## III. CONCLUSION

Accordingly,

IT IS ORDERED that Donald Beckner's motion to dismiss (Rec.Doc. 401) and the Home Insurance Company's motion to dismiss (Rec.Doc. 246) are DENIED.

defense, it cites no law and makes no discussion in favor of such an argument.

12. Among other issues, the Court notes that such an argument would not be evaluated under the standard for jurisdictional challenges which movants argue governs these motions.

13. The Court finds the cases cited by movants, e.g. *Ernst & Young* and *Cenco*, distinguishable from this matter for the reasons set forth earlier its discussion of *in pari delicto* and standing.